IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDON L. BROOKS, # B-86580, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-927-JPG |
| | ) |
| MICHAEL P. ATCHISON, | ) |
| TIMOTHY R. VEATH, | ) |
| LORI OAKLEY, C/O ANDERSON, | ) |
| SGT. MILLER, | ) |
| COUNSELOR GRAPPERHAUS, | ) |
| and C/O BAILEY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Menard Correctional Center ("Menard"). Plaintiff is serving a ten-year sentence for being a felon in possession of a firearm, and two four-year sentences for unlawful use of a weapon and possession of a controlled substance. Plaintiff claims that he was wrongfully punished with segregation on a false disciplinary charge; prison officials failed to properly handle his grievances or report his declaration of a hunger strike; and he was then transferred in retaliation for filing grievances.

More specifically, Plaintiff claims that on March 1, 2012, his cell was searched twice after another inmate informed guards that there was contraband in Plaintiff's cell (Doc. 1, p. 5). During the second search, Lt. Dilday (who is not a defendant) found a razor blade strip under the cell door, and took Plaintiff and his cellmate to segregation. Plaintiff maintains this item was

planted by another inmate who resented the fact that Plaintiff and his cellmate had jobs as prison porters.

Plaintiff spent seven days in the segregation cell after the Inmate Disciplinary Report ("IDR") was filed. This cell was dirty, noisy, and had no heat or ventilation. Plaintiff was under great stress because he had just learned that his pregnant fiancée had been left homeless because their home in Harrisburg, Illinois, had been destroyed by a tornado. He wrote grievances and asked to see a mental health counselor, and stopped eating for seven days while he waited to see a counselor. Plaintiff told Defendant Sgt. Miller that he was on a hunger strike, but Defendant Miller failed to follow prison rules requiring this fact to be reported to health care so that Plaintiff's vital signs and blood sugar could be checked (Doc. 1, p. 5).

Defendant Veath chaired the adjustment committee that considered Plaintiff's IDR on March 6, 2012. Plaintiff submitted a detailed written statement in his defense, including a list of witnesses who would testify that they heard an inmate bragging that he put the razor blade strip under Plaintiff's door. However, Defendant Veath did not call any witnesses or consider Plaintiff's statement. Plaintiff was found guilty and punished with four months of segregation.

Plaintiff served his disciplinary segregation time in another filthy cell that lacked heat or air, and had little ventilation. He was not allowed to exercise regularly. He wrote several grievances over these conditions and other complaints, but Defendant Oakley did not respond to any of them (Doc. 1, p. 5).

Plaintiff declared another hunger strike on March 26, 2012, to demand that he be given a lie detector test regarding the disciplinary charge (Doc. 1-1, pp. 38-39). He informed Defendants Miller, Anderson, and Bailey (correctional officers), but none of these Defendants reported the hunger strike as they should have. Consequently, Plaintiff was never placed on "watch" to

monitor his medical condition. After several days of not eating, Plaintiff was taken to the yard on March 31, 2012.[1] He became dizzy and weak, and could not see straight. A nurse told him he had suffered a mild seizure, and the doctor said it was caused by low blood sugar from not eating. He now suffers from migraines and back spasms that he attributes to the seizure (Doc. 1, p. 6).

When Plaintiff was released from segregation after 120 days, he was placed on a wing with the most violent offenders. Plaintiff wrote grievances and letters to Defendant Atchison regarding this improper placement, as well as spoke to him personally. On approximately August 6, 2012, Defendant Grapperhaus told Plaintiff that if he did not stop writing grievances, he would make sure Plaintiff was transferred up north, far from his family and newborn son. Plaintiff continued to submit grievances, Defendant Grapperhaus threatened him with transfer again, and Plaintiff wrote a grievance over this threat. On November 15, 2012, Plaintiff was transferred to Hill Correctional Center (Doc. 1, p. 6).

On January 16, 2013, Plaintiff was informed that his IDR from March 1, 2012, had been expunged because of failure to follow due process requirements (Doc. 1-1, p. 16). Of course, he had already completed serving the disciplinary segregation time.

Plaintiff seeks nominal, compensatory, and punitive damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the

---

[1] Plaintiff's attached medical records show that this incident happened on March 30, 2012 (Doc. 1-1, pp. 40-42).

following colorable federal causes of action, which shall receive further review:

**Count 1:**  Against Defendant Veath for deprivation of a liberty interest without due process, for subjecting Plaintiff to inhumane conditions of disciplinary segregation after an improper guilty finding on his now-expunged Inmate Disciplinary Report of March 1, 2012;

**Count 2:**  Against Defendant Grapperhaus for causing Plaintiff to be transferred to another prison in retaliation for Plaintiff's protected activity of filing grievances.

However, Plaintiff fails to state a constitutional claim upon which relief may be granted against Defendants Miller, Bailey, and Anderson for failing to report his hunger strikes **(Count 3)**; against Defendant Oakley for failing to respond to his grievances **(Count 4)**; or against Defendant Atchison for improperly placing Plaintiff in a housing unit with the most violent offenders **(Count 5)**.  These claims shall be dismissed for the following reasons.

### Dismissal of Count 3

It appears from the complaint that Plaintiff declared hunger strikes on two different occasions – first while he was in administrative segregation pending the hearing on his IDR, and later, after he was placed in punitive segregation after the hearing.  Both times, Plaintiff told the guards on duty that he was on a hunger strike.  Plaintiff states his belief that prison rules require an officer to report when a prisoner goes on hunger strike, so that medical monitoring can begin within 72 hours (three days).  This did not occur.  Plaintiff's theory is that since Defendants Miller, Anderson, and Bailey failed to report his hunger strike, they should be liable for the damages he suffered from the seizure.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). The Circuit also recognizes that a defendant's inadvertent error, negligence or even medical malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

When an inmate declares a hunger strike, he cannot maintain an Eighth Amendment claim where he is not seen by medical personnel immediately, and the only effects are weight loss and discomfort. *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011) (no deliberate indifference to medical needs where, after 25 days on hunger strike, inmate is taken to medical ward). At the other extreme, at some point during a hunger strike prison officials have the right and the duty to force-feed a prisoner if his continued refusal to eat risks serious injury or death. *Freeman v. Berge*, 441 F.3d 543, 546-47 (7th Cir. 2006). To this end, medical monitoring is prudent and becomes necessary in a protracted hunger strike. But there is no constitutional rule requiring a

hunger-striking prisoner to be evaluated within a set time once he declares his intention to refuse food.  Assuming that Plaintiff is correct regarding the prison rule that required guards to report his hunger strike, the failure to follow that rule does not establish a constitutional violation.  *See Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989) (a federal court does not enforce state law or regulations).

Regarding the objective component of an Eighth Amendment claim, it is not clear that Plaintiff was in need of medical attention four or five days into his hunger strike.  He does not describe having any symptoms before becoming dizzy on March 30, 2012.  And, despite his complaint that he should have been checked by medical staff within 72 hours of declaring his hunger strike, Plaintiff did not ask Defendants Miller, Anderson, or Bailey to arrange for a medical visit for him once that time frame had passed, although he filed an "emergency grievance" directed to Defendant Atchison (the warden).  Based on the complaint, it cannot be said that Defendants Miller, Anderson, Bailey, or Atchison were "on notice" that Plaintiff faced a serious risk of harm to his health before he had his mild seizure.  Without this awareness of an objectively serious risk, Plaintiff cannot show that the Defendants were deliberately indifferent to a known risk of harm to his health.

Furthermore, nothing in the complaint suggests that Defendants Miller, Anderson, Bailey, or any other official purposely failed to inform medical staff of Plaintiff's hunger strike, with knowledge or reckless disregard that this omission could place him at risk.  Plaintiff's allegations do not indicate that their failure to follow the notification rule was anything more than simple negligence.  A defendant can never be held liable under § 1983 for negligence.  *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

For these reasons, Plaintiff has failed to allege deliberate indifference to his medical

needs on the part of Defendants Miller, Anderson, Bailey, or Atchison.  Count 3 shall be dismissed without prejudice.

**Dismissal of Count 4**

Plaintiff asserts that Defendant Oakley (grievance officer) failed to respond to his many grievances, thus interfering with his right to pursue his administrative appeals.  However, there is no indication that Defendant Oakley was directly responsible for Plaintiff's placement in segregation, the conditions there, or the failure to follow the rules on reporting his hunger strikes.

In order to be held individually liable in a civil rights action, a defendant must be "personally responsible for the deprivation of a constitutional right."  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Further, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."  *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  Thus, Plaintiff has no claim against Defendant Oakley, merely because she did not adequately respond to his grievances and complaints.  Count 4 shall also be dismissed for failure to state a claim upon which relief may be granted, but with prejudice.

**Dismissal of Count 5**

Finally, Plaintiff takes issue with Defendant Atchison's refusal to place him in a more appropriate housing unit following his release from segregation.  However, there is no constitutional right for an inmate to be placed in a particular housing area, or to be confined together with inmates of similar security classifications.  The Seventh Circuit has stated, relying on *Montanye v. Haymes*, 427 U.S. 236 (1976), that inmates do not possess a liberty or property interest in their prison classifications.  *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir.

1992). Thus, a state may move a prisoner to any facility within the state, or may place him on any wing of a particular prison.[2] Accordingly, Plaintiff has failed to state a constitutional claim based on his requests to be moved away from the wing he shared with more violent offenders. This claim shall be dismissed with prejudice.

As to any other potential claims against Defendant Warden Atchison, nowhere does Plaintiff assert that Defendant Atchison had any involvement with the due process violation in Count 1, or the retaliatory action in Count 2. His position as a supervisor of Defendants Veath and Grapperhaus does not confer liability on him, because the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Because Plaintiff has not alleged that Defendant Atchison is "personally responsible for the deprivation of a constitutional right," he shall be dismissed from this action without prejudice.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Frazier for further consideration.

**Litigation History**

The Court's standard civil rights complaint form, which Plaintiff used in this case, asks the prisoner-plaintiff whether he has "begun any other lawsuits in state or federal court relating to [his] imprisonment" (Doc. 1, p. 3). In response, Plaintiff wrote, "Not to this imprisonment." *Id*. A review of the electronic docket of this Court, however, shows that Plaintiff brought two lawsuits while he was in prison in 2009, both of which were dismissed upon initial review pursuant to 28 U.S.C. § 1915A. *Brooks v. Jackson Cnty.*, Case No. 09-cv-139 (S.D. Ill.

---

[2] An exception to this rule, of course, is where a transfer is ordered in retaliation for an inmate's protected activity, such as Plaintiff alleges in Count 2 herein.

dismissed June 16, 2009); *Brooks v. Jackson Cnty.*, Case No. 09-cv-138 (S.D. Ill. dismissed Sept. 23, 2009). The dismissal of those actions gave Plaintiff two "strikes" within the meaning of 28 U.S.C. § 1915(g).

The Court relies on a party's litigation history listed in his or her complaint to adhere to the three-strike requirement of § 1915(g), and thus there is a need for reliable information about prior litigation. As a result, where a party fails to provide accurate litigation history, the Court may appropriately dismiss the action for providing fraudulent information to the Court. *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (dismissal appropriate where Court-issued complaint form clearly warned Plaintiff that failure to provide litigation history would result in dismissal).

The records in this case and in Plaintiff's prior dismissed cases do not indicate that dismissal for fraud upon the court is warranted in this instance. However, Plaintiff is advised that when a new case is filed, the Court expects full disclosure of all prior lawsuits filed relating to a plaintiff's imprisonment, regardless of whether the plaintiff has completed the sentence he was serving at the time he filed an earlier case. Therefore, Plaintiff is **WARNED** that if he files another case while in prison and fails to provide his litigation history, his case shall be subject to immediate dismissal.

**Disposition**

**COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNTS 4 and 5** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **ATCHISON, ANDERSON, MILLER,** and **BAILEY** are **DISMISSED** from this action without prejudice. Defendant **OAKLEY** is **DISMISSED** from this action with prejudice.

The Clerk of Court shall prepare for Defendants **VEATH** and **GRAPPERHAUS**: (1)

Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate

Judge **Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    IT IS SO ORDERED.

    DATED: October 3, 2013

                                               *s/ J. Phil Gilbert*
                                               United States District Judge