IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRANDON L. BROOKS, B86580,
    *Plaintiff,*

v.

MICHAEL P. ATCHISON, et al.,
    *Defendants*.

Case Number: 3:13-cv-00927-JPG-PMF

## REPORT AND RECOMMENDATIONS

**FRAZIER, Magistrate Judge:**

Before the Court are two motions; a motion for summary judgment filed by the defendants (Doc. 68) and a motion for summary judgment filed by the plaintiff (Doc. 72). Plaintiff Brandon Brooks is an inmate with the Illinois Department of Corrections ("IDOC") and the two defendants, Timothy Veath and Mark Grapperhaus, are IDOC employees. Brooks filed suit on September 9, 2013 asserting that the defendants violated his constitutional rights while he was housed at Menard Correctional Center ("Menard"). Judge Gilbert screened plaintiff's complaint pursuant to 28 U.S.C. § 1915A and held that Brooks articulated the following colorable claims:

> **Count 1**: Claim against Defendant Veath for deprivation of a liberty interest without due process, for subjecting Plaintiff to inhumane conditions of disciplinary segregation after an improper guilty finding on his now-expunged Inmate Disciplinary Report of March 1, 2012;
>
> **Count 2:** Claim against Defendant Grapperhaus for causing Plaintiff to be transferred to another prison in retaliation for Plaintiff's protected activity of filing grievances.

For the following reasons, it is RECOMMENDED that the plaintiff's motion for summary judgment be DENIED and the defendants' motion for summary judgment be GRANTED.

## I. BACKGROUND

On March 1, 2012 plaintiff Brandon Brooks was housed in the Menard Medium Security unit when correctional officers found a razor blade hidden underneath the bottom of his cell door. (Disciplinary Report, Doc. 69-1, p. 9). Correctional Officers were performing a shakedown of Brooks' cell on that date because they had received an anonymous "kite" or note informing them of the razor blade. *Id.* After correctional officers discovered the razor blade Brooks was transferred down to the Menard maximum security unit. *Id.* The following day Brooks was issued a disciplinary report charging him with "104: Dangerous Contraband," "202 Damage or Misuse of Property," and "308: Contraband/Unauthorized Property." *Id.*

On March 6, 2012 an adjustment committee found Brooks guilty of the charges. (Doc. 69-1, p. 10). The adjustment committee consisted of IDOC employees Timothy Veath and Scott Minh. *Id.* The adjustment committee report states that "I/M Brooks pled not guilty" and "no witnesses requested." *Id.* The committee noted the basis for the decision as:

> Based on the statement made by I/M Brooks and the direct observation of the R/O. C/O Clark while shaking down cell A-31 found a razor blade on the bottom of the cell door which secured by a small magnet. The shake down was ordered after Lt. Dilday received a kite from an unknown inmate. ID by ID card and OTS. Witness C/O Sanders.

*Id.* Brooks was punished with four months in segregation. *Id.*

Although the adjustment committee report states that Brooks did not request any witnesses at the hearing, Brooks had written on his disciplinary report that he wanted Sgt. Hasemeyer and Caraway to testify at the hearing. (Disciplinary Report, Doc. 69-1, p. 9). Brooks asserts that the razor blade was actually planted under the door by an inmate named "Byrd" and that testimony from these witnesses would have supported his innocence. (Doc. 1-1, p. 4).

While in segregation, Brooks appealed the adjustment committee decision to the IDOC Administrative Review Board ("ARB") in Springfield. (Doc. 69-1, p. 12). The ARB received the appeal on April 12, 2012 and issued a decision expunging the disciplinary report on January 16, 2013. *Id.* The ARB stated that the adjustment committee did not provide a reason as to why Brooks' witnesses were not interviewed and the ARB "recommends the disciplinary report be expunged from all records and documents due to non-compliance with the witness procedures." *Id.*

Prior to the ARB expunging the disciplinary report, Brooks served the full 120 days in segregation. (Doc. 69-1, p. 18). The conditions in the Menard maximum security segregation unit were much stricter than those in the Menard medium security unit. In the medium security unit Brooks worked as a porter, and so he would be out of his cell for about 10 hours a day. (Doc. 72-5, p. 11). In segregation Brooks was kept in his cell for 24 hours a day, and only allowed to shower once a week. *Id.* Brooks also testified at his deposition that he was only allowed yard time once or twice a week and that he was provided with inadequate hygiene supplies. (Doc. 69-1, p. 21). During his stay in segregation Brooks filed "a lot" of grievances addressing his adjustment committee hearing and the conditions in segregation. (Doc. 72-5, p. 10).

After serving the 120 days Brooks was transferred out of segregation. (Doc. 72-5, p. 12). Due to the razor blade incident, Brooks was housed in a special gallery at the Menard maximum security unit for staff assaulters and weapons violators. *Id.* He was also required to wear a black and white striped uniform instead of the regular prison uniform. *Id.* Eager to leave Menard, Brooks sent a letter to his counselor, defendant Mark Grapperhaus, requesting a prison transfer. *Id.* Brooks notified Grapperhaus that he was originally from the Carbondale area and that he would like to be transferred to a prison in Southern Illinois so that he could be close to his

fiancée and newborn baby. *Id.* Brooks specifically requested a transfer to Big Muddy Correctional Center, Centralia Correctional Center, or Shawnee Correctional Center. *Id.* Brooks' fiancée also called and spoke to Grapperhaus regarding the anticipated prison transfer. *Id.*

Brooks testified at his deposition that he was "constantly" writing grievances and that Grapperhaus warned him that unless he stopped writing grievances and letters, he would be transferred up north away from his family. (Doc. 69-1, p. 22). On July 30, 2012 Grapperhaus submitted an inmate transfer form recommending that Brooks be transferred to Hill Correctional Center. (Doc. 69-1, p. 14). Hill Correctional Center is located just north east of Peoria. The transfer form states that it is an "institutional transfer request to alleviate bed space at Menard." *Id*. Warden Atchison approved the transfer on August 10, 2012. *Id.*

Brooks states in a declaration attached to his motion for summary judgment that he got into a "big argument" with Grapperhaus on August 6, 2012 when Grapperhaus threatened to transfer him to Hill Correctional Center. (Doc. 72-5, p. 12). He was then involved in another argument with Grapperhaus on August 26, 2012. Id.  Brooks notes that on that date "We [Brooks and Grapperhaus] got into an argument and whole gallery heard it[.]" *Id*.

Attached to Brooks' motion for summary judgment is the declaration of Jason Hanson. (Doc. 72-4, p. 18). Hanson states in his declaration that he observed both of the arguments between Brooks and Grapperhaus. *Id*. In the early August argument Hanson heard Grapperhaus threaten to have Brooks transferred to Hill if he did not stop submitting grievances. *Id*. Brooks then responded by stating "I'm going to write a grievance on your mother-fuking (sic) ass!" In the second argument, Hanson states that he heard "silk[1] curse him [Grapperhaus] out and calling him a bitch and all types of words and counselor Grapperhaus responded back with curse words and walked off." *Id*.

---

[1] "Silk" is a nickname used by Brooks.

Brooks also included an affidavit from DeCarlo Harris, another inmate at Menard who observed the second argument. (Doc. 72-4, p. 26). Harris states in the affidavit that he heard Brooks tell Grapperhaus "Fuck you, you see I'm stressed out and you on this bullshit (sic) trying to send me away from my family just cause you can!" Id.

Brooks was finally transferred from Menard to Hill Correctional Center on November 14, 2012. (Doc. 72-5, p. 12). Brooks asserts that Grapperhaus recommended a transfer to Hill Correctional Center (as opposed to a prison in Southern Illinois) in retaliation for his many grievances and letters. (Doc. 1).

Brooks filed suit on September 9, 2013 (Doc. 1) and all the parties now seek summary judgment.

## II.  ANALYSIS

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When presented with a motion for summary judgment "all evidence must be construed in the light most favorable to the party opposing summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (1986). The summary judgment phase of litigation has been described as the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

Here, both the plaintiff and the defendants have filed motions for summary judgment. In such a situation "[the] court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56

standard [and] both motions must be denied if the court finds that there is a genuine issue of material fact." Wright & Miller § 2720 Procedure on a Motion for Summary Judgment—Cross-motions and Summary Judgment Without a Motion, 10A Fed. Prac. & Proc. Civ. § 2720 (3d ed.).

The Court will address the defendants' motion for summary judgment first. Count 1 of Brooks' complaint is a claim that his due process rights were violated because he was punished with 120 days in segregation and denied the opportunity to present witnesses in his defense. The defendants assert that they are entitled to summary judgment on this claim and present three arguments; that Brooks *did* receive adequate due process because the charges were later dismissed, that Brooks cannot establish a protected liberty interest and that they are entitled to qualified immunity.

Upon review of these arguments, the Court finds that defendant Veath is entitled to qualified immunity on Brooks' due process claim. "Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quote omitted). The Supreme Court has established a two pronged test in determining whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first prong is a question of whether, "[t]aken in the light most favorable to the party asserting the injury … the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. at 201. The second question is whether the constitutional right alleged to be violated was clearly established when the conduct occurred. *Id.* If the Court determines that the answer is "yes" for both prongs, the defendant is not entitled to qualified immunity. The two prongs may be addressed in either order. *Pearson*, 555 U.S. at 236.

Brooks asserts that his due process rights were violated when he was denied the opportunity to present witnesses at his disciplinary hearing. "Prisoners do not shed all constitutional rights at the prison gate." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). If a prisoner is to be punished with conditions that "impose [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" then that inmate is entitled to a disciplinary hearing with minimum due process protections. *Id.* In the context of prison disciplinary proceedings, an inmate is entitled to due process consisting of "advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline, that is supported by "some evidence" in the record." *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974)).

The Supreme Court observed in *Wilkinson v. Austin* that "[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system." 545 U.S. 209, 223 (2005). Federal courts continue to struggle with delineating the boundary between what does and does not constitute an atypical and significant hardship. Recent decisions have not made this task any easier. See, e.g., *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015). However, this is the kind of predicament envisioned the Supreme Court in *Pearson* and so we will focus our analysis on the second prong of the qualified immunity analysis. See *Pearson* 555 U.S. at 237 ("There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right").

Brooks does not cite to, nor is Court is able to find, any case law holding that in March, 2012 a punishment consisting of 120 days in segregation triggers procedural due process

protections. The closest case on point appears to be *Hardaway v. Meyerhoff*. 734 F.3d 740, 745 (7th Cir. 2013). In *Hardaway* the prisoner plaintiff asserted that he should have been afforded *Wolff* due process when he was punished with six months of disciplinary segregation at Menard. 734 F.3d 740, 745 (7th Cir. 2013). The District Court granted summary judgment for the defendants on the basis of qualified immunity. *Id.* The Seventh Circuit affirmed the decision, holding that; "the right to avoid disciplinary segregation in a cell with a solid metal door and a confrontational cell mate for 182 days with weekly access to the shower and recreational yard was not a clearly established right in September 2009 when the conduct occurred." *Id.* This Court was unable to find any developing case law to the contrary published between that date and March, 2012. Thus, in March, 2012 there was no clearly established right for a prisoner to be afforded *Wolff* procedural due process when punished with 120 days in disciplinary segregation. Defendant Veath is therefore entitled to qualified immunity.

Count 2 of Brooks' complaint is a First Amendment retaliation claim against defendant Grapperhaus. Prisoners' First Amendment rights are limited but, "it well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir.1987) (internal quote omitted). To prevail on his First Amendment retaliation claim, Brooks must demonstrate that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir.2009) (internal quote omitted). A prisoner has a right under the First Amendment to file grievances concerning their conditions of confinement. *Watkins v. Kasper*,

599 F.3d 791, 798 (7th Cir. 2010). However, to succeed on a First Amendment retaliation claim the plaintiff must establish that he exercised that right "in a manner consistent with his status as a prisoner." *Id.* (quoting *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004)).

Here, Brooks' loud and confrontational arguments with Grapperhaus in August, 2012 were not constitutionally protected activities. The First Amendment does not entitle an inmate to yell "fuck you" to a correctional officer or prison counselor, particularly when it is said in front of a crowded cell house full of staff assaulters and weapons violators. Such a statement is not consistent "with the legitimate penological interest of prison discipline and order." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). Brooks' initial conduct (i.e., the letter writing and filing of grievances) was protected under the First Amendment. His latter conduct was not. Under these circumstances, Brooks actions extended beyond activity that is protected under the First Amendment and his retaliation claim therefore fails.

Although the defendants are entitled to summary judgment on Counts 1 and 2 of plaintiff's complaint, for the sake of completeness the Court will briefly address the plaintiff's motion for summary judgment. (Doc. 72). Brooks' motion reasserts the claims in his complaint and also argues that the defendants are not entitled to qualified immunity. The defendants filed a response in opposition. (Doc. 73). The defendants argue that Brooks was not subjected to an atypical and significant hardship so as trigger due process protections. The defendants also argue that Brooks was not transferred for retaliatory reasons. When the evidence is viewed in a light most favorable to the defendants, Brooks has not established that he is entitled to judgment as a matter of law pursuant to Rule 56. His motion should therefore be denied.

## III.     RECOMMENDATIONS

It is recommended that the defendants' motion for summary judgment be granted and the plaintiff's motion for summary judgment be denied.

SO RECOMMENDED.

Dated: March 24, 2016

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**
